UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 6:11-CR-59-KKC-2 |
| v. ) | |
| ) | RECOMMENDED DISPOSITION |
| GEORGE RIDNER, ) | |
| ) | |
| Defendant. ) | |
| ) | |

*** *** *** ***

On referral from Chief Judge Caldwell (D.E. 234), the Court considers reported violations of supervised release conditions by Defendant George Ridner. This is his third revocation.

**I.**

District Judge Thapar entered a judgment against Defendant in April 2012 for one count of possession of stolen firearms. D.E. 126 at 1. Defendant was sentenced to 54 months of imprisonment, followed by three years of supervised release. *Id*. at 2-3. Defendant began his first supervised release term on November 13, 2015. However, on April 28, 2016, the United States Probation Office ("USPO") reported that Defendant had submitted a urine sample on April 6 that tested positive for methamphetamine. D.E. 212 at 1-2. The report charged unauthorized use of a controlled substance and commission of felony drug possession. *Id*. An addendum issued May 3 also alleged that he failed to report the existence of a prescription for oxycodone (and lied about it when asked) and failed to report that pills had been stolen. *Id*. Defendant admitted the four charged violations. *Id*. at 3. The parties jointly recommended a

penalty of revocation with ten months of incarceration followed by two years on supervised release, which the Court adopted. *See id*. at 6-7; D.E. 214.

On March 1, 2017, Defendant was again released from custody. On April 28, 2017, the USPO initiated new revocation proceedings based on several violations. The first two violations were based on Defendant's failure to attend a series of scheduled substance abuse and mental health assessments. The third violation was based on Defendant's failure to notify the USPO of another new oxycodone prescription. The fourth charge was failure to report to the probation officer when directed to do so. The fifth and sixth charged violations were based on defendant's admitted use of marijuana and a "pain pill," along with felony drug possession of the marijuana. D.E. 225 at 2-4. Defendant stipulated to all six violations. *Id*. at 4. He was sentenced to fourteen months of imprisonment, followed by twelve months of supervised release. D.E. 230.

Defendant began his next term of supervised release on May 15, 2018. On June 7, the USPO submitted a "12B" request for modification. D.E. 231. According to the USPO, Defendant was told to report to the office and provide a urine sample. During the office visit, Defendant admitted that, on the prior weekend, he consumed more than the prescribed amount of his oxycodone, and had also used hydrocodone, marijuana, and methamphetamine. The USPO noted that, in relation to his two prior revocations, Defendant had been "untruthful and uncooperative." Because he was now being truthful and taking responsibility, the USPO recommended that his supervision not be revoked, but that he be referred to an intensive outpatient treatment program. *Id*. Chief Judge Caldwell approved the modification. *Id*.

## II.

On June 29, 2018, the USPO issued the Supervised Release Violation Report ("the Report") that initiated this revocation. According to the Report, a June 28, 2018 KASPER

search indicated that on June 25, Defendant had obtained a prescription for 84 five-milligram oxycodone tablets, which was listed as a 28-day supply. Further,

> During a June 28, 2018, telephone conversation, the defendant initially denied receiving a new prescription for Oxycodone; however, the defendant later admitted to receiving and filling the prescription for Oxycodone. When asked where the prescription medication was currently located, the defendant admitted there were no tablets remaining. If taken as prescribed, the defendant should have had 72 tablets remaining.

Based on this activity, the Report charges in Violation #1 a violation of Special Condition #7, which requires strict compliance "with the orders of any physician or other prescribing source with respect to use of all prescription medications." This is a Grade C violation.

The Court conducted an initial appearance pursuant to Rule 32.1 on July 19, 2018. D.E. 236. The Court set a final hearing following a knowing, voluntary, and intelligent waiver of the right to a preliminary hearing. *Id*. At the initial appearance, the United States made an oral motion for interim detention; Defendant did not argue for release. *Id.* The Court found that detention was appropriate because Defendant did not carry the heavy release burden imposed upon him under Rule 32.1(a)(6) and 18 U.S.C. § 3143(a). *Id.*

At the final hearing on July 26, 2018, Defendant was afforded all rights due under Rule 32.1 and 18 U.S.C. § 3583. D.E. 238. Defendant competently entered a knowing, voluntary, and intelligent stipulation to the violation. *Id.* Defendant stated under oath that he consumed all 84 pills in less than three days, and thereby failed to follow the prescription. Defendant testified that the prescription authorized him to take three pills a day. Thus, for purposes of Rule 32.1 proceedings, Defendant admitted the factual basis for the violation as described in the Report and the government established the violation under the standard of section 3583(e). The parties did not agree on a recommended sentence.

### III.

The Court has evaluated the entire record, the Report and accompanying documents, documents from previous revocations, and the sentencing materials from the underlying Judgment in this District. Additionally, the Court has considered all the section 3553 factors imported into the section 3583(e) analysis.

Under section 3583(e)(3), a defendant's maximum penalty for a supervised release violation hinges on the gravity of the underlying offense of conviction. Defendant pleaded guilty to possessing a stolen firearm, a Class C felony. *See* 18 U.S.C. § 922(j). For a Class C felony, the maximum revocation sentence provided under section 3583 is two years of imprisonment. 18 U.S.C. § 3583(e)(3).

The Policy Statements in Chapter 7 of the Sentencing Guidelines provide advisory imprisonment ranges for revocation premised on criminal history (at the time of original sentencing) and the "grade" of the violation proven. *See United States v. Perez-Arellano*, 212 F. App'x 436, 438-39 (6th Cir. 2007). Under section 7B1.1, Defendant's admitted conduct would qualify as a Grade C violation. Given Defendant's criminal history category of III (the category at the time of the conviction in this District) and a Grade C violation, Defendant's Range, under the Revocation Table of Chapter 7, is five to eleven months.

A court may re-impose supervised release, following revocation, for a maximum period that usually subtracts any term of incarceration imposed due to the violation. *See* 18 U.S.C. § 3583(b) & (h); *United States v. Brown*, 639 F.3d 735, 737-38 (6th Cir. 2011). Defendant's convictions carried a maximum supervised release term of three years as a starting point, reduced by any revocation term of imprisonment. *See* 18 U.S.C. § 3583(b)(2), (h). Defendant has already been revoked twice and imprisoned for a total of 24 months. Therefore, only twelve

months remains available. Because the Court recommends a revocation sentence greater than twelve months, there will necessarily be no supervised release to follow.

## IV.

At the final hearing, the government recommended an above-Guidelines sentence of eighteen months. Defense counsel requested a within-Guidelines sentence. Neither side requested imposition of additional supervised release.

According to the government, this revocation carries no mitigating factors aside from Defendant's acceptance of responsibility by stipulating to the violation. Counting the 12B, this is Defendant's "fourth go-around." And Defendant received "substantial grace" by the USPO's decision not to seek revocation when Defendant admitted using several drugs, including methamphetamine, earlier this year.

According to the government, Defendant tends to violate quickly once he is released. This time, he was out for about three weeks before the 12B conduct, and then another three weeks before the revocation conduct. The conduct was especially alarming because taking a 23-day supply of oxycodone in about three days is potentially deadly, and may have been a suicide attempt. This indicated a heightened need to deter dangerous behavior and protect the public.

The government acknowledged that Defendant's prescription abuse is different from his underlying conviction for selling stolen firearms. However, the government pointed out that, according to the PSR, Defendant had been taking Percocet (which contains oxycodone) at the time of his underlying offense.

The government argued that the breach of trust was severe because Defendant had not been making serious attempts to comply with his terms of supervision. Defendant has even stated that "paper isn't for me." Defendant is "not getting any better," the government argued, as

his criminal behavior and drug abuse are worse than they were when he was initially arrested. And he has not availed himself of the USPO's attempts to help him. For example, after the 12B, he was scheduled to begin intensive treatment. Instead, he obtained a new painkiller prescription without telling the USPO and consumed it all. According to the government, the circumstances would be more aggravated only if his underlying conviction was drug-related.

The defense argued that, even though this was the third revocation, an upward departure from the Guidelines Range was not warranted. The defense stressed that the Court has known all along that Defendant has a drug abuse problem. He was only able to complete the 40-hour RDAP in prison, not the full program. Underlying Defendant's drug problem is that Defendant is "a chronic pain sufferer." He has severe diabetes and high blood pressure. He has suffered four strokes and a heart attack, and one arm is partially immobile due to a gunshot wound. Overall, Defendant is in "very poor health" at 45 years old, which includes "mental health issues." In fact, he has been on disability benefits since age ten. Defense counsel explained that Defendant did not appear as scheduled at the Adanta Group on June 26 because he had been hospitalized after ingesting the oxycodone.

Defendant declined to address the Court.

### IV.

To determine an appropriate revocation term of imprisonment, the Court has considered all the statutory factors imported into the section 3583(e) analysis, as well as the Guidelines Range. Congress mandates revocation in a case of this nature. By statute, the Court must revoke Defendant because he possessed a controlled substance in a manner that violated the mandatory conditions of supervision. *See* 18 U.S.C. § 3583(g)(1); *see also United States v. Crace*, 207 F.3d 833, 836 (6th Cir. 2000) (equating use with possession). The defense agreed that revocation is

mandatory in this case because defendant possessed a controlled substance, the use of which was unlawful under the circumstances. 18 U.S.C. § 3583(g)(1).

The Court first considers the nature and circumstances of Defendant's conviction. *See United States v. Johnson*, 640 F.3d 195, 203 (6th Cir. 2011) (explaining that this sentencing factor focuses upon the original offense rather than the violations of supervised release). Defendant was caught trying to sell stolen firearms or trade them for pills, and admitted he did so while under the influence of marijuana and Percocet. *See* PSR ¶ 20. His underlying offense was serious and posed grave dangers.

The Court next considers Defendant's history and characteristics, and the need to deter criminal conduct and protect the public. The circumstances underlying Defendant's conviction suggest he is an addict who behaves recklessly. Defendant's dangerous conduct while using drugs is a thread that runs throughout his criminal history. His failures to succeed on supervision confirm this characterization. His previous convictions, drug treatment, revocations, and the recent modification of conditions have not deterred him from abusing drugs while on release. He also has a history of lack of candor with the probation officer. Further, this is Defendant's third revocation and he was recently shown leniency in the form of a 12B modification, despite admitting the use of multiple illegal drugs. On the other hand, the Court understands that Defendant suffers from chronic ill health and mental and physical pain, on top of dealing with addiction. On balance, though, Defendant's history shows he is difficult to deter and thus poses a danger to the community. These factors weigh in favor of imposing a heavy penalty.

Another factor to consider is education, treatment, and training for the Defendant. Although the Court previously recommended drug and mental health treatment, Defendant did not avail himself of these opportunities. Although Defendant clearly needs more substance

abuse treatment, now that he is no longer eligible for additional supervised release, there is nothing more this Court can do.

The Guidelines suggest that the ***primary*** wrong in the supervised release context is the violation of the Court's trust by an offender. The particular conduct is an important but secondary issue. *See* Guidelines 7 Pt. A(3)(b) ("[A]t revocation the court should sanction primarily the defendant's breach of trust, while taking into account, to a limited degree, the seriousness of the underlying violation and the criminal history of the violator."). The Court must impose a sentence that is sufficient, but not greater than necessary, to address Defendant's breach of trust and the other statutory goals imported into section 3583(e). Defendant's conduct here represents an egregious breach of the Court's trust. Ingesting large amounts of oxycodone was reckless behavior that put his own life at risk. His violations have happened quickly upon release. The USPO granted an astonishing degree of leniency when it sought modification rather than revocation upon Defendant's admission to using illegal drugs in June. Thus, this factor also weighs in favor of a stiff sentence.

One factor the Court must consider is the need to avoid unwarranted sentencing disparities. This factor is usually addressed by imposing a within-Guidelines sentence. Here, the Court recommends a sentence above the Range. When varying from the Range, the Court must provide an adequate explanation and "'consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance.'" *United States v. Johnson*, 640 F.3d 195, 205 (6th Cir. 2011) (quoting *Gall v. United States*, 552 U.S. 38, 50 (2007)). The Court must state "'the *specific reason* for the imposition of a sentence different from that described [in the applicable Guidelines or policy statements.]'" *Id.* (quoting 18 U.S.C. § 3553(c)(2)).

8

Here, as previously described, the breach of trust and the need to deter criminal conduct and protect the public counsel in favor of an above-Guidelines sentence. This is Defendant's third revocation. He has a history of failure to comply with conditions, drug abuse, and dishonesty with the probation officer. No further supervision is available. There is little explanation for his pattern of failures to comply with his terms of supervision. The previous efforts by the Court and the USPO to elicit improvement have failed. His history suggests he can slip into criminal conduct when abusing drugs. On balance, a within-Guidelines sentence is inadequate to address the current circumstances.

Defendant is lucky that he survived, and the Court wishes him the best going forward. Nevertheless, based on the severity of his history of violations, the undersigned adopts the government's recommendation of revocation with eighteen months of imprisonment and no supervised release to follow.

## V.

Based on the foregoing, the Court **RECOMMENDS**:

1. That Defendant be found guilty of the violation.

2. Revocation with a term of imprisonment of eighteen months and no supervised release to follow.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights concerning this recommendation, issued under subsection (B) of the statute. *See also* 18 U.S.C. § 3401(i). As discussed at the final hearing, pursuant to Rule 59(b)(2), any party wishing to object **SHALL** do so by an appropriate filing in the record within **FIVE DAYS** after being served with a copy of this recommended decision. Any party may object to any or all portions of this recommendation for consideration, *de novo*, by the District Court. Failure to make timely objection consistent

with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals. *See Thomas v. Arn*, 106 S. Ct. 466 (1985); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981).

Defendant's right of allocution under Rule 32.1 is preserved, as reflected in the record. Any waiver should comport with the Court's standard waiver form, available from the Clerk. Absent waiver, the matter will be placed on Chief Judge Caldwell's docket upon submission. If Defendant chooses to waive allocution, she **SHALL** do so on or before the deadline for filing objections.

This the 27th day of July, 2018.

Signed By:
*Hanly A. Ingram*
United States Magistrate Judge